STUART, Justice.
FMR Corp. n/k/a FMR LLC, Fidelity Management Trust Company, and Fidelity Brokerage Services LLC (hereinafter referred to collectively as “Fidelity”) appeal the order of the Pike Circuit Court denying their motion asking the court to compel Elizabeth Ann Howard n/k/a Elizabeth Ann Hart (“Hart”) to arbitrate Fidelity’s dispute with her regarding her responsibility to indemnify Fidelity for losses it might suffer if Hart’s stepchildren prevail on claims they have asserted against Fidelity that are the subject of a separate pending arbitration proceeding. We reverse and remand.
I.
On July 31, 2006, Hart’s husband, Frederick Howard, opened an online individual retirement account with Fidelity (“the Fidelity IRA”), funding it with approximately $1.2 million that had previously- been held in a retirement account administered by Howard’s former employer, BellSouth Corporation. Although Howard had previously designated his three children from a prior marriage—John Troy Howard, Jennifer Howard Brown, and Reed Howard (hereinafter referred to collectively as “the Howard children”)—as the beneficiaries of the BellSouth retirement account, he did not designate any beneficiary for the Fidelity TRA at the time it was opened or at anytime thereafter.
On January 31, 2011, Howard died; his death certificate listed the cause of his death as Parkinson’s disease, which he had suffered from since at least 2003. Howard’s will left all his personal property to the Howard children, explaining therein that no provision was being made in the will for Hart because “she has a sizeable separate estate of her own” and because úpon his death she would take ownership of the marital residence and certain other monetary accounts that she and Howard had held as joint tenants with the right of survivorship. However, because Howard never designated a beneficiary for the Fidelity IRA, Fidelity distributed the approximately $1.4 'million held in that account to Hart in accordance with the terms of the Fidelity IRA, which provided that any assets in the account would become the property of a surviving spouse when the account holder died if no beneficiary had been named. The Howard children unsuccessfully challenged that distribution in the Pike County Probate Court.
On October 10, 2012, the Howard children sued Fidelity and Hart in the Shelby Circuit Court, asserting claims of undue influence, fraud, and conversion against Hart and a claim of negligence against Fidelity. The gravamen of their claims was that Howard was incompetent at the time the Fidelity IRA was opened and that Hart was the impetus behind the online opening of the Fidelity IRA, while Fidelity *446 was alleged to be negligent for failing to implement adequate procedures governing its online-account-opening process that would prevent either fraudulent activity or invalid actions by incompetent individuals. Upon being served, Fidelity requested an extension of time within which to file an answer, which the circuit court granted, noting in its.order doing, so that “[t]his extension of time does not waive, and specifically reserves [Fidelity’s] right to-arbitrate any claims in this, matter.” Meanwhile, Hart’s first action was to file a motion asserting that the proper venue for the Howard children’s claims was the Pike Circuit Court and requesting a transfer of the case to that forum.
On February 7, 2013, Fidelity, rather than file an answer to the Howard children’s complaint, moved the Shelby Circuit Court to compel arbitration, noting in its motion that Howard, Hart, and the Howard children had all executed documents related to accounts with Fidelity that contained arbitration provisions. Specifically, Fidelity noted that at the time of his death Howard owned multiple investment accounts with Fidelity besides the Fidelity IRA and that those accounts listed Hart and the Howard children as co-beneficiaries. Upon Howard’s death, Hart and the Howard children opened their own accounts with Fidelity to receive their respective shares of the funds held in those other accounts, and, in the process of doing so, Hart and the Howard children agreed to an arbitration provision providing, in relevant part: '
“All controversies that may arise between you and us concerning any - subject matter, issue, or circumstance whatsoever (including, but not limited . to, controversies concerning any account, order, or transaction, or-the continuation, performance, interpretation, or breach of this or any other agreement between you and us, whether entered into or arising before, on, or after the date this account is opened) shall be determined by arbitration through the Financial Industry Regulatory Authority (FINRA)
The Shelby Circuit Court did not immediately rule on Fidelity’s motion to compel arbitration, instead allowing Hart and the Howard children to litigate the venufe issue, upon which Fidelity took no position. See generally Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1076 (Ala. 2004) (indicating that parties have the right to establish the proper venue before the issue of arbitration is considered).
On February 25-, 2014, the Shelby Circuit Court entered orders ruling on the two motions pending before it. In the first order, the court granted Fidelity’s motion to compel arbitration and ordered the Howard children to submit their claim against Fidelity to the Financial Industry Regulatory Authority (“FINRA”) for arbitration. In the second order, the court granted Hart’s motion for a change of venue, agreeing that the Pike Circuit Court was the proper forum to hear the claims asserted against Hart by the Howard children. The Pike Circuit Court thereafter conducted the necessary proceedings and, on December 19, 2014, entered a final judgment resolving all claims asserted, by the Howard children against Hart. Neither the Howard children nor Hart appealed that judgment, and that judgment is not the subject of this appeal.
In May 2015, the Howard children initiated arbitration proceedings against Fidelity by filing a statement of claim with FINRA. In August 2015, Fidelity filed with FINRA- its response to the Howard children’s statement of claim, in which it also asserted a third-party claim against Hart for indemnification, noting- that the *447 customer agreement she had agreed to abide by when opening her Fidelity accounts contained both an indemnification clause and the previously quoted arbitration provision. Hart responded by filing a motion in the Pike Circuit Court seeking a judgment declaring, essentially, that Fidelity could not compel her to participate in the arbitration proceedings involving Fidelity and the Howard children.
On April 13, 2016, Fidelity moved the Pike Circuit Court (“the trial court”) to compel Hart to arbitrate the issue whether she was obligated to indemnify Fidelity for any damages, costs, and expenses it might be ordered to pay the Howard children in arbitration as a result of Fidelity’s distribution of the proceeds of the Fidelity IRA to Hart following Howard’s death. Fidelity based its motion on the arbitration provision Hart had agreed to when she opened her own Fidelity accounts after Howard’s death; as noted, that provision stated, in relevant part, that “[a]ll controversies that may arise between you and us concerning any subject matter, issue, or circumstance whatsoever ... shall be determined by arbitration.” The trial court thereafter heard oral arguments on the issue and on June 22, 2016, entered an order holding that Hart could not be compelled to participate in arbitration at the current time, stating: •
“Compelling [Hart] to now participate as a party, in the arbitration of the claims asserted by [the Howard children] against [Fidelity] would be prejudicial to [Hart] as any claim [Fidelity] may have against [Hart] has not ripened at this time. Accordingly, the matters presently before the court are hereby stayed pending further order and [Hart] shall not, at this time, participate as a party in the arbitration of the claims asserted by [the Howard children] against [Fidelity].
“Within ten (10) days of the conclusion of the arbitration of the claims asserted by [the Howard children] against [Fidelity], [Fidelity] shall cause to be filed with this court a report of the final order of the arbiter. If, at that time, the arbitration ruling was adverse to [Fidelity], the amended motion for declaratory judgment made by [Hart] and1 the motion to compel arbitration filed by [Fidelity] shall be deemed as submitted for ruling. However, if the arbitration ruling was favorable to [Fidelity], the amended motion for declaratory judgment made by [Hart] and the motion to compel arbitration filed by [Fidelity] shall be dismissed as moot.”
Fidelity now appeals the trial court’s-denial of its motion to compel arbitration pursuant to Rulé 4(d), Ala. R. App. P.
II.
Our standard of review of a ruling denying a motion to compel arbitration is well settled:
“ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter- a motion to compel arbitration has been made and supported, the burden is on the ■ non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).”’
*448 Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000)).
III.
In conjunction with its motion to compel arbitration, Fidelity submitted documents establishing (1) that Hart entered into contracts calling for arbitration when she opened various Fidelity-branded accounts after Howard’s death, and (2) that the transactions underlying those contracts affected interstate commerce. The burden thus shifted to Hart to establish either that the arbitration provision in those contracts was not valid or that it did not apply to the dispute in question. Gantt, 882 So.2d at 315. On appeal, Hart does not challenge the validity of the identified arbitration provision; instead, she argues (1) that there is in actuality no current dispute between her and Fidelity—only the possibility of a future dispute in the event the Howard children prevail on their claim against Fidelity currently in arbitration— and (2) that, even if there were a dispute between her' and Fidelity, Fidelity has waived its right to compel arbitration of that dispute. Before considering these arguments addressing the merits of the trial court’s decision, however, we must first consider Hart’s preliminary argument that Fidelity’s appeal should be dismissed because, she argues, there has been no final judgment.
In its June 22, 2016, order, the trial court stated that it would not compel arbitration “at this time” but indicated that it might do so at some point in the future. Hart accordingly argues that there has been no final judgment that can support an appeal because, she says, the arbitration issue has not been conclusively determined. See, e.g., Palughi v. Dow, 659 So.2d 112, 113 (Ala. 1995) (“An appeal will ordinarily lie only from a final judgment; that is, a judgment that conclusively determines the issues before the court and ascertains and declares the rights of the parties.”). We disagree. Once Fidelity established both the existence of a contract calling for arbitration and that that contract evidenced a transaction affecting interstate commerce, it was entitled to have its motion to compel arbitration granted unless Hart thereafter submitted evidence establishing either that the arbitration provision was not valid or that it did not apply to the dispute in question. Gantt, 882 So.2d at 315. By not granting Fidelity’s motion to compel arbitration, the trial court “effectively and substantively” denied the motion, and Fidelity is entitled to pursue appellate review of that decision. Southland Quality Homes, Inc. v. Williams, 781 So.2d 949, 952 (Ala. 2000). A key purpose of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., is to permit the speedy resolution of disputes, Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 13 (Ala. 2006), and allowing an order effectively denying a motion to compel arbitration to avoid appellate review because the trial court indicated it might yet compel arbitration at a later date would frustrate that intent to a large degree. Fidelity’s appeal is accordingly properly before this Court.
We thus turn to Hart’s argument that there is. no cognizable dispute between her and Fidelity that can be sent to arbitration. Essentially, Hart argues that, while Fidelity is engaged in an active dispute with the Howard children, it can have no dispute with her regarding her ultimate responsibility to indemnify Fidelity for losses related to that dispute until and unless an award or judgment is entered against Fidelity. Hart appears to concede that, if such an award or judgment is entered, Fidelity might then have an arbi-trable dispute with her; however, Hart *449 argues, until that happens, Fidelity’s third-party-indemnification claim is simply not ripe because, she argues, only the possibility of a future dispute exists.
Fidelity argues that there is presently a dispute between it and Hart that falls within the broad scope of the arbitration provision—specifically, whether Hart is liable to Fidelity for damages it might owe the Howard children if it is determined that funds were wrongfully distributed from the Fidelity IRA opened by Howard to a separate Fidelity account opened by Hart following Howard’s death. We agree that this dispute, or “controversy” as it would be called using the terminology of the arbitration provision, falls within the scope of that arbitration provision. In their briefs to this Court, Hart and Fidelity make extensive arguments regarding the ripeness of this dispute; however, inasmuch as we have held that the subject matter of the dispute is clearly within the arbitration provision, any ripeness issue must be resolved by the arbitrator, not by this Court. See, e.g., Transportation Workers Union of America v. Veolia Transp. Servs., Inc., 24 F.Supp.3d 223, 230 (E.D.N.Y. 2014) (holding that argument that “the dispute is allegedly not ripe” 'is “for the arbitrator to decide, not the court”); Milliman, Inc. v. Health Medicare Ultra, Inc., 641 F.Supp.2d 113, 119 (D.P.R. 2009) (‘Whether the alleged dispute that led Petitioners to commence arbitration proceedings ... is ripe must ultimately be determined by the arbitrator.”); Ace American Ins. Co. v. Huntsman Corp., 255 F.R.D. 179, 210 (S.D. Tex. 2008) (“[I]f it is determined that arbitration is warranted, questions of the ripeness of the underlying disputes ... may be determined by the arbitrators.”).
Hart next argues that, even if Fidelity’s dispute with her is subject to the arbitration provision, Fidelity has nevertheless waived its right to enforce that provision against her because, she alleges, Fidelity failed to invoke the arbitration provision in a timely manner. In support of this argument, Hart emphasizes the lengthy history of this case and the fact that the Howard children initiated litigation against her and Fidelity in October 2012 but that Fidelity did not seek to enforce the arbitration provision against her until August 2015, approximately eight months after she had resolved her dispute with the Howard children. However, as was the case with Hart’s previous argument, this issue must be decided by the arbitrator, not this Court.
In Dudley, Hopton-Jones, Sims & Freeman, PLLP v. Knight, 57 So.3d 68, 71 (Ala. 2010), this Court similarly considered an argument that a party had waived its right to compel arbitration by failing to request it in a timely fashion and held that that issue should be decided by the arbitrator, not the Court, explaining:
“In Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006), this Court stated that ‘whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator.’ We further explained that ‘[i]n order' to show waiver by litigation-related conduct, the party opposing arbitration must demonstrate that the movant has substantially invoked the litigation process ....’ 939 So.2d at 14. Washington therefore represents an exception to the general presumption in arbitration law that arbitrators should decide allegations of waiver. See, e.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (‘[T]he presumption is that the arbitra *450 tor should decide “allegation[s] of waiver, delay, or a like defense to arbitrability.” ’).
“That exception does not apply in this case, however, because [the appellee] is not arguing that [the appellant] waived its right to arbitrate its claims by sub-' stantially invoking the litigation process. Rather, [the appellee] is arguing that [the appellant] waived its arbitration rights based on its failure to pursue its claims in a timely fashion. See [the ap-pellee’s] brief, p. 15 (‘[The appellant’s] conduct in sitting on its hands for almost a decade before seeking arbitration of its claims constitutes a waiver of its right to arbitration. Just as parties can waive their contractual right to arbitration by substantially invoking the litigation process, they can also waive such rights through dilatory conduct.’), An allegation of waiver such as this falls outside the exception articulated in Wash-. ington and is subject to the general rule that arbitrators should decide issues of waiver or delay; accordingly, we cannot affirm the judgment of the circuit court on this basis. See also Brasfield & Gorrie, 35 So.3d [601] at 606-07 n.1 [ (Ala. 2009) ] (explaining that whether a party has waived its right to arbitration by substantially inyoking the litigation process is a matter for the trial court because invoking the litigation process involves matters .that occurred under the trial court’s watch; such a waiver is therefore distinguishable from a waiver based on other factors not involving litigation conduct).”
In this case, although Hart has cited Georgia Power Co. v. Partin, 727 So.2d 2, 7 (Ala. 1998), for the general principle that “[a] court will hbt find a waiver of the right to arbitration unless the party seeking arbitration has so substantially invoked the litigation process that to-compel arbitration will substantially prejudice the party opposing it,” she makes no argument that Fidelity has waived its right to compel arbitratioh because of its litigation conduct; she instead relies exclusively on her general allegation of delay and the faets that the event underlying this dispute occurred in July 2006 when the Fidelity IRA was opened and that litigation based on that event began in October 2012, and yet Fidelity did not act to compel arbitration of its claim against her until August 2015.[1] Hart has made no real argument that Fidelity substantially invoked the litigation process, and her argument that Fidelity waived its right to compel arbitration by failing to make that request in a timely manner is the type of waiver argument that is left to the arbitrator, not a court of law, to decide. See Knight, 57 So.3d at 71 (explaining that allegations of waiver such as this are “subject to the general rule that arbitrators should decide issues of waiver or delay”),
IV.
The trial court denied Fidelity’s motion to compel arbitration in this case, notwithstanding the fact that Fidelity submitted competent evidence establishing that a contract-calling for arbitration existed between it and Hart and that the underlying transaction affected interstate commerce. Hart’s argument that the arbitration provision she agreed to does not apply to the dispute with Fidelity is without merit," and the arguments she has raised regarding ripeness and waiver concern issues that are for the arbitrator, not a court of law, to *451 decide. Accordingly, the judgment entered by the trial court denying Fidelity’s motion to compel arbitration is reversed and the cause remanded for the trial court to enter an order granting the motion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Bolin, Parker, and Wise, JJ,, concur.
Shaw, J., concurs specially.

. Fidelity states that it was essentially a passive observer in the litigation initiated by the Howard children after it moved for arbitration—which it did before even filing an answer—and that Hart accordingly cannot identify ' any litigation activity on its part that would merit a finding that it had substantially invoked the litigation process, .