Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### 1210120
_____

## Communications Unlimited Contracting Services, Inc.

### v.

### Steve Clanton

### Appeal from Jefferson Circuit Court
### (CV-20-903926)

BOLIN, Justice.

Communications Unlimited Contracting Services, Inc. ("CUI"), appeals from a judgment of the Jefferson Circuit Court granting a motion filed by Steve Clanton to remand for clarification an arbitration award

issued by Judicial Arbitration and Mediation Services, Inc. ("JAMS"). We reverse the judgment and remand the case.

## Facts and Procedural History

Clanton and Martin Rocha had known each other for a number of years before the events giving rise to this litigation. Clanton had formerly worked for Rocha in Athens, Georgia installing cable systems on college campuses, and Clanton and Rocha had remained in contact with each other over the years. Rocha went on to found CUI, a Florida corporation with its principal place of business in Homewood, Alabama. CUI has been in business for more than 25 years and is a provider of cable-installation services. Rocha is the sole owner of CUI.

In 2009, following Hurricane Ike, Clanton became involved in the restoration industry. Clanton earned certifications in various areas of the restoration industry and, in 2018, formed Steven Clanton, LLC, d/b/a SCI Restoration Services, LLC ("SCI"), a Georgia limited-liability company with its principal place of business in Jacksonville, North Carolina. SCI quickly became successful, primarily providing storm-restoration services, including water-mitigation services, mold-mitigation services, and roofing repair, for residential and commercial customers.

In March 2019, Clanton contacted Rocha about the possibility of Rocha's becoming involved in SCI. Rocha traveled to North Carolina and spent time with Clanton and Luke Woodruff, Clanton's bank representative, to study SCI and the restoration industry. Subsequently, Clanton traveled to Birmingham to meet with Rocha and Joseph Miller, CUI's president, to discuss a joint business venture. Clanton had Woodruff submit bank statements and spreadsheets, which showed that SCI had accounts receivable and contracts representing $18.7 million. Within a few days, the parties had agreed to a nonbinding letter of intent. Over the course of the next couple weeks, Clanton, Rocha and their representatives renegotiated the terms of the nonbinding letter of intent.

On April 1, 2019, CUI and Clanton signed a revised nonbinding letter of intent. That letter of intent contemplated that the parties would form SCI Restorations, L.L.C., which would purchase all the assets of SCI by paying to Clanton $2 million and 75% of the accounts receivable collected each month. That letter of intent also provided that that CUI would own 51% of SCI Restorations and SCI would own 49% of SCI Restorations.

In April 2019, SCI registered to do business in Alabama. Clanton and SCI moved into CUI's offices in Alabama and began expanding operations to the Alabama market. CUI issued Clanton an American Express credit card to pay for SCI's expenses, and Clanton started using CUI employees to conduct administrative and marketing work for SCI.

On May 30, 2019, Andy Key, CUI's accountant, who had been reviewing SCI's financial information that had been provided by Clanton, issued a financial statement for SCI. The financial statement for SCI showed that, as of March 31, 2019, SCI had total assets of $6,757,216, which included $620,449 in cash; $2,388,194 in accounts receivable for completed jobs; $2,790,723 in "costs and estimated earnings in excess of billings" for jobs in progress; and $940,050 in vehicles, equipment, and personal property. Not included in the total assets listed in the financial statement were contracts that Clanton represented had been signed, representing $3.3 million in expected income for jobs that had not yet been started and for jobs in progress for which a portion of the work had not yet been started.

In June 2019, SCI began working numerous jobs in the Alabama market. At that time, CUI and Clanton decided not to form SCI

Restorations for the purpose of purchasing SCI. Rather, they decided that CUI would purchase a 50% interest in SCI directly from Clanton. Clanton and CUI entered into a purchase agreement and assignment effective July 1, 2019, whereby Clanton agreed to sell 50% of his interest in SCI to CUI. Section 1.2 of the purchase agreement provided that CUI was to transfer to Clanton 100% ownership interest in a house owned by Rocha located in Hoover; that Clanton was to receive moneys collected on certain accounts receivable held by SCI totaling approximately $2.4 million, conditioned upon SCI having at least $400,000 in cash on hand; that Clanton was to receive any cash on hand from SCI above $200,000 as of the effective date of the agreement; that CUI was to pay Clanton $200,000; and that Clanton was to receive a salary of $150,000 per year from SCI.

Disputes between CUI and Clanton soon arose regarding CUI's purchase of a 50% interest in SCI. Clanton claimed that the Hoover house had not been transferred to him and that he never received the moneys payable to him under the purchase agreement, specifically the moneys collected on SCI's accounts receivable and any cash on hand in excess of $200,000 as of the effective date of the purchase agreement. Clanton

contended that he had fulfilled his obligations under the purchase agreement by selling 50% of SCI to CUI. Clanton, after becoming "fed up" with CUI's not fulfilling its obligations under the purchase agreement, emailed Rocha on October 23, 2019, expressing his desire to "unwind" the purchase agreement.

The dispute between Clanton and CUI arising from CUI's purchase of a 50% interest in SCI was ultimately presented to arbitration before a JAMS arbitrator. CUI sought approximately $969,000 that it alleged that it had invested in SCI and the fair-market value of a 50% interest in SCI, which it valued at $3,865,935. Clanton sought the fair-market value of the house located in Hoover, which the parties agreed was valued at $765,000; $2,388,194 in moneys allegedly owed from SCI's accounts receivable; and $550,000, which represented the cash on hand above $200,000 available to SCI on the effective date of the purchase agreement. Following a five-day arbitration proceeding, the JAMS arbitrator, on August 18, 2020, entered an arbitration award, awarding CUI $889,443 and awarding Clanton $840,000. In reaching the arbitration award, the arbitrator made it clear that she was resolving only the monetary claims between the parties arising from their failed

6

contractual business arrangement, stating: "I do note that the decision to unwind was made by Clanton unilaterally" and "I further note that both parties now seek a proper accounting. Both CUI and Clanton have raised the issues of who currently owes what to the other party to this Arbitration. My job as Arbitrator is to rule on the parties' various claims for monetary relief." The arbitrator made no finding regarding whether any ownership interest CUI had in SCI should revert to Clanton or whether Clanton owned SCI outright. The arbitrator also did not purport to dissolve SCI.

Following the issuance of the arbitration award, CUI, on August 28, 2020, commenced a statutory dissolution action in the Superior Court of Walton County, Georgia, seeking dissolution of SCI ("the dissolution action").[1] In commencing the dissolution action, CUI noted that, as a result of the purchase agreement and assignment, CUI held a 50% interest in SCI.

After the commencement of the dissolution action, Clanton, on September 1, 2020, submitted a request for clarification of the arbitration

---

[1]The dissolution action was brought in Georgia because, as noted earlier, SCI is a Georgia limited-liability company.

award to JAMS, asking that the arbitrator issue a ruling on "the parties' interest, or lack thereof, in [SCI]." On September 3, 2020, JAMS responded that "the Arbitrator's jurisdiction is limited to timely requests for correction pursuant to JAMS Streamlined Arbitration Rule 19(i)," that Clanton's request did not fall into that category, that therefore JAMS had no jurisdiction to consider Clanton's request, and that the arbitration proceeding was closed and would remain closed. On November 11, 2020, CUI filed in the Jefferson Circuit Court an application for an order confirming the arbitration award.

Clanton filed a motion to dismiss the dissolution action. While that motion was pending, Clanton, on August 5, 2021, again submitted a request for clarification to JAMS. Clanton attached to the second request for clarification a proposed order specifically requiring that the arbitrator make certain new rulings, including, among other things, that "[a]ll ownership interests in [SCI] reverted to Respondent Steve Clanton," that "[t]he Parties' Purchase Agreement and Assignment were rendered null and void," and that "Mr. Clanton was awarded ownership of the [Hoover house] ... based on the equities of the case." On August 16, 2021, JAMS rejected the second request for clarification, again stating that it had no

jurisdiction to consider the issues raised in Clanton's second request for clarification and that the issues raised in the request should be addressed by a court.

On September 1, 2021, the Georgia court presiding over the dissolution action entered an order denying Clanton's motion to dismiss that action. The Georgia court rejected Clanton's argument that the arbitration award estopped or precluded CUI from pursuing the dissolution action, stating:

> "[T]he arbitration award nowhere makes any finding regarding 'unwinding the deal,' nor on the ownership of SCI. To the contrary, the arbitrator did order CUI to pay to Clanton the 'main consideration' for its ownership interest in SCI, which the Court finds is inconsistent with the transaction having been 'unwound.' The Court finds no ambiguity in the award as regards ownership of SCI. Because the arbitrator did not decide the ownership of SCI, collateral estoppel or preclusion does not apply."

Also on September 1, 2021, the Georgia court entered an order denying a motion to stay the dissolution action that Clanton had filed during his efforts to get the JAMS arbitrator to clarify the arbitration award. The Georgia court reiterated that it found "no ambiguity in the award requiring clarification" and that "there is no issue of ownership of SCI involved in any arbitration." The Georgia court, citing 9 U.S.C. § 12, a

part of the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., concluded that "the 'clarification' Clanton seeks, considering what he would ask the arbitrator to declare, would be in the nature of a modification of the award, and the time to seek a modification has long since run."

On September 9, 2021, Clanton filed in the Jefferson Circuit Court his answer to CUI's application for an order confirming the arbitration award and a motion for clarification of the arbitration award, in which he requested that the circuit court either clarify the award or remand the award to the arbitrator for clarification. October 11, 2021, CUI filed its response to Clanton's motion for clarification, arguing that JAMS had already twice declined Clanton's requests for clarification of the arbitration award; that the arbitration award is not ambiguous in what it addressed (the monetary claims), as the Georgia court presiding over the dissolution action had already held; and that, because the ownership issue had not been addressed by the arbitrator, adding a ruling on that issue would represent, and require, a modification, not a "clarification," of the arbitration award.

On October 12, 2021, the circuit court entered an order styled "Order Allowing a Clarification of the Arbitrator's Award" and directed the parties to submit proposed orders to allow submission of an additional request for clarification to the arbitrator. On October 15, 2021, the parties submitted the proposed orders as directed by the circuit court. CUI again took the position that no clarification was needed and that Clanton was seeking an improper and untimely modification of the arbitration award. Clanton's proposed order submitted to the circuit court again illustrated that Clanton sought what he called a "global clarification" and a declaration as to the parties' respective ownership interests in SCI. On that same day, the circuit court entered an order remanding the arbitration award to JAMS for clarification concerning the parties' ownership interests in SCI. CUI appealed.

## Standard of Review

This appeal presents a question of law -- namely, whether the circuit court erred in remanding the arbitration award to JAMS for a "clarification" -- which this Court reviews de novo. Ex parte Alabama Rivers Alliance, 165 So. 3d 597 (Ala. 2014).

## Discussion

CUI argues on appeal that the circuit court erred in remanding the arbitration award to JAMS for a "clarification" because, it says, Clanton seeks an untimely modification of the award that is prohibited by the FAA.

"Judicial review of arbitration awards is 'narrowly limited,' and the FAA presumes that arbitration awards will be confirmed." Gianelli Money Purchase Plan & Trust v. ADM Inv. Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998) (quoting Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir. 1995)); Maxus, Inc. v. Sciacca, 598 So. 2d 1376, 1380 (Ala. 1992) (stating that "the role of the courts in reviewing the arbitration award is limited"). It is well established that, "[a]bsent a timely motion to vacate [or modify], in most cases' the confirmation of an arbitration award is a summary proceeding that makes what is already a final arbitration award a judgment of the court.'" Domino Grp. Inc. v. Charlie Parker Mem'l Found., 985 F.2d 417, 420 (8th Cir. 1993) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).

The FAA provides that "[n]otice of a motion to … modify ... an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The three-

month period is "not subject to extension." <u>Barclays Cap., Inc. v. Hache</u>, No. 16 Civ. 315 (LGS), July 12, 2016 (S.D.N.Y. 2016) (not reported in Federal Supplement). Once the three-month period for filing a motion to vacate or modify has expired, a subsequent attempt to vacate or modify an arbitration award cannot generally be made, even in opposition to a later motion to confirm the award. <u>Cullen v. Paine, Webber, Jackson & Curtis, Inc.</u>, 863 F.2d 851, 853-854 (11th Cir. 1989). After the three-month period has expired, the successful party has a right to obtain confirmation of the award in a summary proceeding. <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d at 175; see also <u>Romero v. Citibank USA, Nat'l Ass'n</u>, 551 F. Supp. 2d 1010, 1012 (E.D. Cal. 2008), and <u>Popular Sec., Inc. v. Colon</u>, 59 F. Supp. 3d 316, 318 (D.P.R. 2014). Here, Clanton did not file a motion to modify or vacate the arbitration award within the three-month period provided in 9 U.S.C. § 12. Rather, Clanton filed a motion in the circuit court seeking clarification of the arbitration award regarding the parties' ownership interests in SCI.

Arbitration proceedings are "'summary in nature to effectuate the national policy favoring arbitration'" and remands of arbitration awards are disfavored because they threaten to disrupt the FAA's policy "of

13

expeditious arbitration." Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 1410, 1413 (11th Cir. 1990) (quoting Legion Ins. Co. v. Insurance Gen. Agency, Inc., 822 F.2d 541, 543 (5th Cir. 1987)); see also, e.g., Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008)(noting "the general rule that '[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation'" (quoting Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997))); General Elec. Co. v. Anson Stamping Co., 426 F. Supp. 2d 579, 599 (W.D. Ky. 2006) ("Remand [of an award to the arbitrator] is a procedure ... that should be used sparingly."). This Court has noted, "[a] key purpose of the Federal Arbitration Act ... is to permit the speedy resolution of disputes ...." FMR Corp. v. Howard, 227 So. 3d 444, 448 (Ala. 2017). Whenever possible, "a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." Teamsters Local No. 579 v. B&M Transit, Inc., 882 F.2d 274, 278 (7th Cir. 1989). Remand to the arbitrator is "an exceptional remedy, 'a procedure to avoid if possible.'" Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru, 892 F. Supp. 2d 53, 57 (D.D.C.

2012) (quoting Ethyl Corp. v. United Steel Workers of Am., AFL-CIO, 768 F.2d 180, 188 (7th Cir. 1985)).

Although remand of an arbitration award is strongly disfavored, courts have the authority to remand if the award itself is ambiguous or fails to address a contingency that arises after the entry of the award. Green v. Ameritech Corp., 200 F. 3d 967, 977 (6th Cir. 2000). Ambiguity, however, requires something more substantial than a simple disagreement between the parties. Rather, the arbitration award must be "so ambiguous that a court is unable to discern how to enforce it," Telenor Mobile Commc'ns AS v. Storm LLC, 351 F. App'x 467, 469 (2d Cir. 2009), with the arbitrator's intent "hopelessly difficult" to determine. Ethyl Corp., 768 F.2d at 187; see also United States Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830 (10th Cir. 2005). Remand to clarify an alleged ambiguity is not proper when the matter can be resolved from the record. See, e.g., Flender Corp. v. Techna Quip Co., 953 F.2d 273, 280 (7th Cir. 1992).

CUI argues that Clanton is seeking an untimely modification of the arbitration award under the guise of a motion for clarification. "[A] court must be careful -- indeed, it is obliged -- to pierce the language of any

request to remand for clarification to assure that it is not a disguised request for modification or vacatur of an award." Lanier v. Old Republic Ins. Co., 936 F. Supp. 839, 850 (M.D. Ala. 1996). As discussed above, the arbitrator expressly set forth the scope of her task: "My job as Arbitrator is to rule on the parties' various claims for monetary relief." A cursory look at the arbitration award shows that resolving the parties' competing claims for monetary relief is precisely what the arbitrator did. The arbitrator made no finding as to the issues upon which Clanton now seeks a "clarification," i.e., issues relating to the ownership interests of the parties in SCI. When the language of Clanton's motion is pierced and compared to the language of the arbitration award -- which, as will be discussed below, is unambiguous as to its scope and as to the monetary amounts awarded to the parties -- it is clear that Clanton's motion for a clarification was, in fact, a request for a modification of the arbitration award. Lanier, 936 F. Supp. at 850.

This conclusion is supported by Clanton's own proposed orders that he submitted both to JAMS and to the circuit court. In his proposed order to JAMS, Clanton sought to require the arbitrator to make certain new rulings, including that "[a]ll ownership interests in [SCI] reverted to

Respondent Steve Clanton," that "[t]he Parties' Purchase Agreement and Assignment were rendered null and void," and that "Mr. Clanton was awarded ownership of the [Hoover house] ... based on the equities of the case." Any question as to whether such rulings would amount to substantive additions to the arbitration award -- rather than being mere clarifications of actual findings of the arbitrator -- is answered by Clanton himself, who requested the insertion of those new rulings "in addition to other rights and obligations explained in the Award." Such rulings would be "in addition to" the arbitrator's findings and rulings in the arbitration award, because the arbitrator made no findings or rulings on the relevant matters. Indeed, such rulings would also be contrary to the arbitrator's stated description of her job in the arbitration proceedings and, if "added," would likely have required modification or vacatur of other parts of the arbitration award. Based on the foregoing, we conclude that Clanton's motion for "clarification" was, in fact, an untimely filed motion for modification of the arbitration award.

CUI further argues not only that Clanton's motion for clarification demonstrates that he sought relief well beyond what can be characterized as a "clarification," but also that the arbitration award itself is simply not

ambiguous regarding what the arbitrator was intending to resolve, what the arbitrator actually awarded, and to whom it made awards. CUI argues that no remand is warranted in this case; instead, it says, under the "summary proceeding" anticipated under the FAA when there has been no timely motion to vacate or modify an arbitration award, the circuit court should have simply confirmed the award as it is. Domino Grp., 985 F.2d at 420. We agree.

On its face, the arbitration award is unambiguous, clearly stating that the arbitrator was resolving only the monetary claims between the parties, actually resolving only the monetary claims between the parties, and awarding each party certain amounts as money damages. The arbitrator made no determination as to the parties' ownership interests in SCI. There is no ambiguity regarding the amounts awarded by the arbitrator, regarding the party to whom those amounts were awarded, or regarding the categories of damages that they represent. Clanton cannot render the arbitration award ambiguous simply by claiming that, in addition to ruling on the parties' claims for monetary relief, the arbitrator should also address the nonmonetary issues that he now seeks to put before the arbitrator. The arbitration award is not "'so ambiguous that a

18

court is unable to discern how to enforce it,' ... with the arbitrator's intent 'hopelessly difficult' to determine," as is required for a remand for clarification. Duke Energy, 892 F. Supp. 2d at 57. Because the awards of money damages for each party were clearly stated and unambiguous in amount and scope, the circuit court erred in remanding the arbitration award to JAMS for clarification.

## Conclusion

Based on the foregoing, we conclude that the circuit court erred in remanding the arbitration award for clarification. We therefore reverse its judgment and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.